against Southern Illinois University. Mr. Banks. Thank you, your honor. May it please the court. Appellant was a valuable employee of the appellee from 2002 when she started working at the university until she sought a promotion. She got along fine with her original supervisor, Mr. Washburn, but under the new regime, her fate was significantly more unpleasant. Appellant was subjected to discrimination based on her race and when she had the temerity to complain about it, she was retaliated against. Appellant has met all four prongs of McDonnell-Douglas Corporation v. Green and his progeny. There is no doubt that she is in a protected class, an African-American. There is some discussion, some creative differences, some differences of opinion regarding whether or not she suffered an adverse employment action. We say that being passed over for promotion, having your continuing appointment abated, being locked out of certain meetings that are necessary for you to do your job, we say that that is an adverse employment action. Of course, the district court disagreed with our contention that she was performing her job duties satisfactorily, the third prong under McDonnell-Douglas v. Green. It is said she didn't play nice with others, that she was contentious. Admittedly, the relationship with the appellant and her new supervisor was strained. She was verbally reprimanded once, but she was never suspended. She never suffered a demotion. She never even had a performance improvement plan or an unsatisfactory rating. Under the third prong of McDonnell-Douglas v. Green, she was somebody preparing and doing her duties competently. And of course, the fourth prong, whether similarly situated individuals who were not part of the protected class were treated differently. Well, of course, the district court says that whether you use the direct method or the indirect method, the appellant has not proven her case. In spite of the fact that the record is uncontradicted that she was the only person exiled to Siberia, the infamous 420 University Place building, where on page 34 of our supplemental appendix, she outlines the indignities that she suffered there. The refrigerator had student sheet brains on it. The microwave didn't work. The faucets, even after they ran for an hour, had discolored water. Reportedly, these were addressed belatedly. On page 37 of our supplemental appendix, one of the appellee's agents reports back to his superior, well, there's no more bags of dead cats and the place is good and lonely. We respectfully submit that given the context, given the totality of the circumstances, there remained significant material facts for a jury to decide whether or not discrimination and retaliation took place. And for those reasons, we ask that the district court's decision be reversed and remanded. And I'd be happy to address any questions you may have. If we apply McDonnell-Douglas, what evidence of pretext is there? The evidence of pretext is that the appellees have belatedly said that the appellant was an unsatisfactory employee. Now that was raised during discovery, that was raised during the motion for summary judgment. That was not raised with appellant when she worked there. She was never given any warning. Look, you need to get your act together, otherwise you're going to be out of here. She was never given any type of constructive counseling with the exception of, admittedly, one verbal reprimand. The things that human resources professionals require were not done in the instance of appellant, and that is our evidence of their pretext. Thank you. Thank you, Mr. Banks. Mr. Reese. May it please the court. Your Honors, I am here on behalf of the University, Southern Illinois University, which is the only appellee left in this case. The other individual defendants were granted summary judgment and Plaintiff has abandoned the claims against the individual defendants. So today I'm speaking only on behalf of the University and only with respect to the only two counts that are upon appeal, which are Plaintiff's Title VII Race Discrimination case claim, excuse me, and Plaintiff's Title VII Retaliation claim. The district court correctly granted summary judgment in the University's favor on these two claims. A review of the record and the matters put before this court demonstrates that there are no facts which support any inference of discrimination based upon Plaintiff's race or retaliation based upon her engaging in a protected activity. The district court painstakingly went through, in a very lengthy opinion, all of the facts and the history of this case. They also analyzed those facts under multiple different theories, under the direct evidence method, under the circumstantial direct evidence method, under the indirect McDonnell Douglas v. Green method, and look at the totality of circumstances. Under all those different methods, Plaintiff... What are the direct and indirect methods to which you refer? Sure. Well, the direct method, and I know that this court... What are we to make of that? Your Honor, I think that, as I understand Ortiz, the Seventh Circuit opinion, what that opinion said and what this court said is that evidence is evidence, regardless of whether he's put under the... whether you look at it under a... There are no direct and indirect methods. That's the holding of Ortiz. Ortiz says that there are different... In Ortiz, the court said, today's decision does not concern McDonnell Douglas or any other pertinent shifting framework, no matter what it is called for shorthand. And in the cases after Ortiz, this court has also said that nothing in Ortiz disagrees with McDonnell Douglas. We have the authority to overrule the Supreme Court, but that's not direct versus indirect. It's a burden shifting method. Direct versus indirect is gone. And if the bar doesn't understand that, we're not going to have cases presented adequately. Your Honor, I think that the issue is, regardless of what it's called, I think Ortiz was very clear. And as a matter of fact, in looking at Judge Herndon's opinion, Judge Herndon actually cited to Orton Bell v. Indiana's opinion. And in his opinion, Judge Herndon specifically said, the Seventh Circuit emphasizes that all relevant direct and circumstantial evidence is considered in its totality in both methods. But we do indeed consider the direct and indirect methods separately when reviewing summary judgment. I think that Ortiz and Orton Bell and the prodigy of case in the Seventh Circuit make clear that you can use different methods to evaluate it. The key is, and I think in Ortiz, Your Honor, the issue became very clear. What happened in Ortiz was that the district court, there was evidence of animus, which is under the direct prong. And when the district court went to look at McDonnell Douglas, Your Honor, there are no prongs. There are no methods. If you would make the argument free of stuff that we have deliberately ditched, that might help your case. Okay, Your Honor, and I will do that. All right. Looking at this, the Seventh Circuit has said, whether the evidence would permit a reasonable fact finder to conclude that plaintiff's race caused the discharge. Or in the case of retaliation, whether the evidence would permit a reasonable fact finder to include the plaintiff's engagement of protected activity caused the discharge. In this case, there is simply no evidence that plaintiff's race, that a reasonable fact finder could conclude that plaintiff's race played any part in the decision. There are no issues of racial epithets or racial statements being made. There are no facts in the record about similarly situated individuals being treated differently than plaintiff. There are no facts in the record about in any way, shape, or form that plaintiff's race played a decision, played a part in the decision. Similar with the retaliation claim. There's no evidence that any decision maker relied upon, used, or made any comment about her prior lawsuits in relationship to the decision to terminate her employment. So why was plaintiff sent off to this, I gather, infamous and disaster of a building? Well, so first of all, your honor, the infamous Siberia is not in the record. That is a term of art that a plaintiff has used. But no one has testified to that. There's no evidence in the record to support that characterization. What is in the record is that the building that plaintiff was sent to was one of the newer buildings on campus. That is in the record and that is not disputed. That building was a newer building. It contained both offices and laboratories. And that's also in the record. When they talk about the refrigerator containing sheep brains and whatever, that refrigerator is in a lab because that's part of the building. That refrigerator is not a refrigerator intended for people to store their food. So what do we make of the email comment about it being lonely? Sure. What plaintiff is referring to are two emails that are an email that was drafted, first of all, almost four months before she moved into the place. And what had happened is the Facilities Management Department took over the responsibility for that building in 2015. And the previous occupants were clearing out. So somebody went over there, an individual, and was reporting back on how much of the stuff was being cleared out and whether the trash was removed and everything else. So when we talk about the good and lonely comment, first of all, that individual, there's nothing in the record regarding what that individual meant by that. The individual wasn't deposed. There's no explanation for what that meant. But put in the context of the emails that are in the record, to me what it has indicated is that there were previous occupants of the building and now that those occupants are out. So the building is vacant. It's empty. That's it. When we talk about Siberian being good and lonely, what's also in the record, Your Honor, is that plaintiff was not the only one in that building. The evidence in the record is clear that there was an adjacent part of the building that people regularly worked in. And the only reason why the part of the building that the plaintiff was in was vacant for a period of time was because she moved in there in May and class was not in session. The record is also clear that that following fall when class was in session, students and other individuals were also in the same part of the building as she was. So it's a newer building that was cleaned up before she went there. And people worked in the adjacent part of the building and also students regularly used the labs and the other stuff in that part of the building while she was there. So to characterize this as Siberia or something else is a statement that is not supported by anything in the record. I'd like to talk about the record very briefly. When the university and the defendant submitted their motion for summary judgment, they submitted a statement of material facts that had 100 or so material facts. Plaintiff actually admitted 90% of the facts without contradicting them. With respect to the 10% of the facts that she disputed, most of them contain no citation to the record. So if you look at the record, it's not really a dispute. Here's plaintiff's and I'll sum up plaintiff's race discrimination claim very shortly. Plaintiff's race discrimination claim basically exists of this. I was an African American. I was one of two African American managers in my department. And I was terminated. Those are the only facts in the record which support her race discrimination claim. If we look at her retaliation claim, it's almost exactly the same. I engaged in protected activity when I filed some prior lawsuits back in 2012 and 2014. I was terminated in 2016. That's it. And I don't know anyone else who was treated the way I was. That's all the evidence to support her retaliation claim. When we look at this circuit standard and we look at the totality of the evidence, there simply is no evidence in the record that would allow a reasonable fact finder to conclude that plaintiff's race or her previous protected activity played any part in the ultimate decision to terminate her employment. Thank you. Thank you, Mr. Lease. Anything further, Mr. Banks? Make no mistake, your honors, protestations to the contrary notwithstanding, 420 University Place was Dante's ninth circle of hell. Supposedly, it's a new building. It's a new raggedy building. The record shows that appellant complained to her supervisor about getting an eye infection in this enclave full of bio-waste. In terms of her being not treated differently than similarly situated people, she was the only person at her level that was exiled to this corner of the campus. She was not given office supplies. She was not helped with her move. She was not allowed a vehicle even though her responsibilities covered multiple buildings and she was told if she used her own car, she would not be reimbursed for mileage. She was not given a portable radio so that she could communicate with her colleagues so that if something went wrong from a security point of view, she could call for help. All of this was done in retaliation for her filing her discrimination claims charges based on her race and for those reasons, the district court's decision affirming the summary judgment should be overruled, reversed and remanded, and the appellant should be allowed her day in court. Thank you, counsel. The case is taken under advisement.